Toribio **VILLANUEVA–JURADO,**
Petitioner,

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE,** Respondent.

No. 72–3696.

United States Court of Appeals,
Fifth Circuit.

July 10, 1973.

Rehearing Denied Aug. 2, 1973.

Albert Armendariz, El Paso, Tex., for petitioner.

Ronald F. Ederer, Asst. U. S. Atty., William S. Sessions, U. S. Atty., Ralph E. Harris, Asst. U. S. Atty., El Paso, Tex., Richard G. Kleindienst, Atty. Gen., U. S. Dept. of Justice, Washington, D. C., Troy A. Adams, Jr., District Director, Imm. & Nat. Service, New Orleans, La., William E. Weinert, Trial Atty., Immigration and Naturalization Service, El Paso, Tex., of counsel, for respondent.

Before GOLDBERG, CLARK and RONEY, Circuit Judges.

CLARK, Circuit Judge:

Toribio Villanueva-Jurado petitions for review of a deportation order of the United States Immigration and Naturalization Service. Petitioner's claim of American citizenship is without merit. The petition is dismissed.

In 1932, the time of petitioner's birth in Mexico, Section 1993 of the Revised Statutes of 1874[1] was in effect. Substantially, Section 1993 provided that foreign-born children of American citizen fathers and alien mothers were citizens of the United States. However, the statute contained no similar provision for children born abroad of alien fathers and American citizen mothers.[2] Though petitioner concedes that his father was not an American citizen, he alleges, and we assume, that his mother was a native-born American citizen.

Villanueva-Jurado contends that the statutory distinction between the citizenship status accorded to foreign-born offspring of American citizen fathers and the non-citizen status of the similarly situated offspring of American citizen mothers is an invidious discrimination forbidden by the Constitution. That contention must be rejected. This court, in rejecting a somewhat similar attack on a statutory provision[3] which differentiated between the procedure for naturalization of adopted and natural children of naturalized parents, has recently stated:

[A]n alien has no constitutional right to citizenship which is a privilege conferred as a matter of grace by Congress under Article 1, § 8 of the United States Constitution relative to the power of Congress "to establish a uniform Rule of Naturalization." *See* Rogers v. Bellei, 401 U.S. 815, 91 S.Ct. 1060, 28 L.Ed.2d 499 (1971).

Hein v. United States Immigration and Naturalization Service, 456 F.2d 1239, 1240 (5th Cir. 1972). Moreover, we have held that "Congress has a completely free hand in defining citizenship as it relates to persons born abroad," United States v. Trevino Garcia, 440 F.2d 368, 369 (5th Cir. 1971). In *Garcia* it was contended that Congress had improperly failed to discriminate between those who voluntarily leave the United States and those who leave involuntarily.[4]

Villanueva-Jurado argues that the Supreme Court decision in Rogers v. Bellei, *supra*, requires that this court determine whether the citizenship standards established by Congress in the exercise of its constitutionally recognized power are "unreasonable, arbitrary, or unlawful." This argument, however, misreads *Bellei*. That case dealt with the power to subject already-granted citizenship to a *condition subsequent*. It is not proper to apply the *Bellei* test to the instant controversy. There the test was applied to a condition which would have operated to take away citizenship already conferred because of the non-fulfillment of a statutory condition imposed upon the initial grant. Here the power has been

---

1. All children heretofore born or hereafter born out of the limits and jurisdiction of the United States, whose fathers were or may be at the time of their birth citizens thereof, are declared to be citizens of the United States; but the rights of citizenship shall not descend to children whose fathers never resided in the United States.

2. Though Section 1993 has been repealed and replaced by superseding statutory provisions, including the present 8 U.S.C. § 1401(a)(7), Section 301(a)(7) of the Immigration and Nationality Act of 1952, which affords the same status to all for-

eign-born children of either American citizen parent, these more liberal provisions are not to be applied retroactively. *See* Rogers v. Bellei, *infra*, 401 U.S. at 826, 91 S.Ct. at 1066; *see also* Palomo v. Mitchell, 361 F.Supp. 455 (S.D. Tex. 1972), aff'd sub nom. Palomo v. Kleindienst, 474 F.2d 1345 (5th Cir. 1973) (per Local Rule 21).

3. Section 321 of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1432.

4. The provision attacked was Section 201 (g)(1) of the Nationality Act of 1940 (now 8 U.S.C. § 1401(a)(7)).

exercised to establish a *condition precedent* to the initial attainment of United States citizenship.[5] As this court recognized in Hein v. United States Immigration and Naturalization Service, *supra*, *Bellei* imposes no restrictions on the power of Congress to determine the requirements for citizenship status.[6]

Moreover, such guidance as may properly be drawn from *Bellei* supports the proposition that Section 1993 in its 1932 form has no constitutional infirmity. For instance, that case makes this statement:

> Not until 1934 would [a person born abroad of an American mother and an alien father] have had any conceivable claim to United States citizenship. For more than a century and a half no statute was of assistance. Maternal citizenship afforded no benefit. One may observe, too, that if [such a person] had been born in 1933, instead of in 1939 [as was Bellei], he would have no claim even today.

401 U.S. at 826, 91 S.Ct. at 1066. *See also* Montana v. Kennedy, 366 U.S. 308, 81 S.Ct. 1336, 6 L.Ed.2d 313 (1961).

■ Villanueva-Jurado also contends that the deportation order is invalid because he was not represented by an attorney at the hearing before the Special Inquiry Officer. This contention is not well taken. Villanueva-Jurado does not raise the question of his right to have counsel appointed for him on the basis of indigency. (*See* Rosales-Caballero v. Immigration and Naturalization Service, 472 F.2d 1158 (5th Cir. 1973).) Moreover, the record in this case convincingly shows that the appointment of an attorney would have been unavailing and hence unnecessary. The operative facts were undisputed and the law is clear.

Nor was Villanueva-Jurado denied the opportunity to retain private counsel to represent him at the hearing. In fact, the record of the hearing demonstrates that the Officer received a negative reply when he asked Villanueva-Jurado if he desired to retain the services of an attorney.

The petitioner's remaining contentions do not merit discussion. The petition for review is

Dismissed.

5. *Cf.* The Supreme Court, 1970 Term, 85 Harv.L.Rev. 3, 64, 70 n.37 (1971) ; Note, 44 N.Y.U.L. Rev. 824, 835 n.73 (1969).

6. Of course, the constitutional grant of power itself proscribes congressional action which would be geographically disuniform. No such lack of uniformity is involved in the case at bar.